DAHLGREN v. WHITAKER.

(District Court, E. D. Pennsylvania. July 15, 1903.)

No. 14.

1. CHARTER PARTY—CONSTRUCTION—"LAID UP FOR REPAIRS."

A yacht is "laid up for repairs," within the provision of a charter party, in such case allowing a rebate from the charter money, where it is at rest, having some damage made good that in a material degree impaired its ability to pursue the voyage as a yacht, though the charterer may continue to eat and sleep and entertain friends on board.

2. SAME—REBATE FROM CHARTER MONEY.

Under a charter party providing that if the yacht meets with an accident, and in consequence is laid up for repairs for a period exceeding seven days, there shall be a rebate from the charter money for the number of days it is so laid up for repairs, the rebate is not for the time in excess of seven days, but for the whole period it is laid up.

In Admiralty.

Morgan & Lewis, for libelant.

Ira J. Williams and Simpson & Brown, for respondent.

J. B. McPHERSON, District Judge. The respondent, who was the owner of the schooner yacht Iroquois, chartered her to the libelant for the three months from June 15 to September 15, 1901. The charter money was $4,150, and the agreement between the parties contained the following clause:

"It is further agreed that in case the said yacht Iroquois should during the time of this charter meet with an accident and in consequence thereof be laid up for repairs for a period exceeding 7 days, the owner shall return to the hirer a pro rata amount of the charter money for the number of days the said yacht is so laid up for repairs."

On August 25th, in the harbor of Newport, the schooner collided with the steam yacht Nourmahal, and suffered a good deal of injury, which need not be described in detail. She was not fully repaired until September 5th, and for this period of 11 days the libelant claims the stipulated rate of demurrage. The defenses are that there was undue delay in making the repairs; that there were errors of judgment in deciding what was best to be done; and, in any event, that the respondent is only liable for the number of days in excess of seven. It is true that a fourth defense was put forward in the testimony and at the argument, but I am not sure whether it was intended to be taken seriously. It appeared that while the repairs were being made the libelant slept on board three or four nights, and entertained his friends on several occasions at dinner or supper. This, it is argued, was one of the uses to which a yacht is intended to be put, and therefore, as long as she could be used as a hotel or a restaurant, she could not be said to be laid up for repairs "within the meaning of the provision of the charter party." I am unable to assent to this construction of the agreement. To be "laid up for repairs" means, as I think, no more than this: the boat must be at rest, having some damage made good that in a material degree impairs her ability to pursue the voyage as a yacht; and it does not seem to me to make any difference that while such injuries are being repaired the libelant may continue to eat and sleep and to entertain his friends on board.

The defenses of undue delay and erroneous judgment are, in my opinion, probably born of the respondent's subsequent reflection. Apparently they were not thought of at the time, for he was at Newport for several days while the boat was laid up, and found little, if anything, then to criticise in the efforts that the libelant was making. The testimony satisfies me that the libelant was anxious to get away as soon as possible, and hastened the work as much as he could, and that the hiring of a mainsail in New York was the best, if not the only, expedient that could have been adopted in order to proceed with the voyage quickly and with due regard to safety.

Concerning the defense that the respondent is liable at most for the days in excess of seven, I can only say that, as it seems to me, nothing but much subtlety of construction can extract such a mean-

ing out of the clause in controversy. The ordinary, natural sense of the words I take to be this: The possibility of accident, and consequent delay for repairs, were considered when the boat was hired; thereupon the libelant took the risk of all delays less than a period arbitrarily chosen—seven days—and the respondent took the risk of all delays beyond that period. I see nothing remarkable, still less absurd, in this agreement; on the contrary, if the risk was to be shared at all, it was inevitable that some period must be named, and seven days seemed reasonable to the contracting parties.

A decree may be entered for 11 days' demurrage at the stipulated rate.